**NEW HOLLAND MACHINE COMPANY,**
**Appellant,**

v.

**Arthur C. LEWIS, Jr., Appellee.**

**No. 8058.**

Court of Civil Appeals of Texas, Texarkana.

Aug. 17, 1971.

Rehearing Denied Sept. 7, 1971.

Robert H. Mow, Jr., Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellant.

Gordon R. Wynne, Wynne & Wynne, Wills Point, for appellee.

CHADICK, Chief Justice.

Mr. Arthur C. Lewis, Jr., was doing custom farm work in the year 1966, which included operation of a *combine*. That year he traded in his used machine on a newly manufactured Model 980 New Holland Combine at Terrell Tractor Company. A written purchase agreement dated March 1, 1966, was executed, and in the instrument Mr. Lewis bound himself to pay $11,210.98 in five installments at dates therein specified and secured payment thereof by a chattel mortgage lien upon the new combine. As Terrell Tractor Company's assignee of the purchase agreement, New Holland Machine Company, a Division of Sperry Rand Corporation, filed suit on January 10, 1969, against Arthur C. Lewis, Jr., in a District Court of Dallas County to foreclose the lien on the combine and recover judgment for a balance alleged to be due under the purchase agreement of $9,950.68, together with interest, attorney's fees and costs of suit.

Arthur C. Lewis, Jr., filed a plea of privilege to be sued in Kaufman County, and subject thereto answered by general denial and filed a cross-action for recision and breach of warranty, praying that New Holland Machine Company "take nothing by reason of its suit herein, but that by reason of this cross-action the entire matter be rescinded, the purchase agreement and note cancelled and he be paid in damages the value of his trade-in and the cash paid by reason of such contract, and for such other and further relief, general or special, in law or in equity, to which he may show himself justly entitled." The plea of privilege was sustained and the case was transferred to Kaufman County.

At the conclusion of a non-jury trial, judgment was entered that both New Holland Machine Company and Arthur C. Lewis, Jr., take nothing, and costs were adjudged against New Holland. In response to a request therefor, the Trial Judge filed findings of fact and conclusions of law. New Holland objected to

such findings and conclusions and requested additional findings of fact, and the request was denied. New Holland has appealed. A more detailed statement of procedure, pleading and proof will be given as occasion therefor arises.

█ New Holland's brief summarizes grouped Points of Error 19 thru 22 as follows:

"The trial court erred in refusing to find and conclude that Terrell Tractor was an independent dealer, was not an agent of New Holland, that it purchased the combine in question for its own account from New Holland and was an independent contractor,"

and thereby presents a pivotal question in this appeal. New Holland tendered its branch credit manager as a witness, and upon cross-examination he was asked the relationship between New Holland and Terrell Tractor Company, and replied:

"Terrell Tractor Company was our dealer in Terrell, Texas, handling the New Holland line of equipment."

Subsequently, with reference to Terrell Tractor Company and the Lewis purchase, he was asked:

"Did they sell this for you, this New Holland combine?"

Answer: "Yes."

Further examination of this witness developed evidence that New Holland manufactured the machine in question and delivered it to Terrell Tractor Company as one of its dealers on a floor plan agreement, taking Terrell Tractor Company's note for the purchase price. The floor plan agreement was not introduced into evidence and the term "floor plan" was not explained. No objection to the quoted testimony was interposed. Other evidence was introduced that Terrell Tractor Company was authorized to contractually bind New Holland by incorporating into the over-all sales contract a copy of New Holland's written

warranty. Terrell Tractor Company did so, and New Holland now insists in argument under other points that the warranty is a provision of the over-all sales agreement.

It is elementary that the Trial Judge, as fact finder, had the duty in this case, as well as the power and prerogative, of determining the credibility of the witnesses and the weight to be given the testimony, and in the exercise of this responsibility the judge was empowered to reconcile conflicts in evidence. This Court has previously held that a farm machinery dealer was the manufacturer's agent for venue purposes when the manufacturer authorized the dealer to incorporate the manufacturer's written warranty into and as a contractually binding provision of the dealer's sales contract. Allis-Chalmers Mfg. Co., et al. v. J. Coplin et al., 445 S.W.2d 627 (Tex.Civ.App. Texarkana 1969, no writ). In this instance, the record shows Terrell Tractor Company was authorized by New Holland to make New Holland's written warranty a binding provision of the sales contract with Lewis. Necessarily, if the warranty is binding as New Holland insists, Terrell Tractor Company represented New Holland and was New Holland's agent for this purpose, and such fact tends to corroborate the credit manager's testimony that Terrell Tractor Company was New Holland's dealer in Terrell, Texas, and was acting for New Holland when it sold the combine. Having concluded that the evidence is sufficient to support the Trial Court's finding that Terrell Tractor Company was New Holland's agent, it necessarily follows that Terrell Tractor was not as a matter of law an independent dealer, nor that it sold the combine for its own account as an independent contractor. Points 19 thru 22 are overruled.

■ New Holland groups Points of Error 1 thru 6 for briefing and summarizes them as follows:

"The Trial Court erred in refusing to find and conclude that New Holland purchased the March 1, 1966, Purchase Agreement for good and valuable consideration, in good faith and without notice of any defenses on the part of Lewis, and was therefore a holder in due course in fact as well as by presumption of law, and was entitled to recover the total unpaid balance plus attorneys fees under such agreement."

This is a pre-Uniform Commercial Code case, and is governed by the Negotiable Instruments Act, Tex.R.Civ.S., art. 5932, et seq. (1962). A holder in due course is defined by Article 5935, Sec. 52. The definition excludes from the status of a holder in due course a holder having notice of an infirmity in the negotiated instrument. The problem presented by the trial judge's conclusion that Terrell Tractor Company was New Holland's agent is not new, though no Texas case precisely in point has been found. As a general rule of agency, knowledge or notice to an agent is imputed to the principal. The general rule has application in this instance. See International Harvester Co. of America v. Newberry, 16 S.W.2d 871 (Tex.Civ.App. Beaumont 1929); International Harvester Co. of America v. Watkins, 127 Kan. 50, 272 P. 139; 11 Am.Jur.2d, Bills and Notes, Secs. 462 and 478; 9 Tex.Jur.2d, Bills and Notes, Sec. 101; 10 C.J.S. Bills and Notes § 342; 61 A.L.R. 694, Anno.—Agent Holder in Due Course, sec. III; 44 A.L.R.2d 8, Anno.: Commercial Paper—Transferee—Defenses, Sec. 23. The treatise on Bills and Notes in American Jurisprudence (Sec. 478 just cited) states the principle in this way, viz:

The general rule that the principal is chargeable with, and is bound by, the knowledge of, or notice to, his agent received while the agent is acting within the scope of his authority and which is in reference to a matter over which his authority extends applies generally where the principal is a holder of commercial paper and his agent receives notice while acting in the scope of his agency. * * * The general rule is

also applied under some circumstances in cases in which one takes paper by transfer or indorsement from his agent or dealer. While it is difficult to formulate a rule which will cover all the cases of this kind, the more usual situation is that in which the agent or dealer takes the paper in the course of the principal's business, where it in reality belongs to the principal though taken nominally in the name of the agent or dealer."

Under the trial judge's valid agency finding, New Holland, as assignee of its agent Terrell Tractor Company, took the purchase agreement of March 1, 1966, subject to any infirmity therein. Points of Error 1 thru 6 are overruled.

■ As a witness, Mr. Lewis testified that he read, heard and studied New Holland's brochures, magazine, newspaper and radio advertising, as well as talked with a salesman for Terrell Tractor Company, concerning New Holland's Model 980 Combine. That as a result of his investigation and the representations emanating from such sources, he entered into the purchase agreement made the basis of New Holland's suit. At this point, it is well to observe that neither Mr. Lewis nor any other witness explained a combine's operation or function. The Trial Court apparently relied upon judicial knowledge. This Court is aware that a combine used in custom farming, as Mr. Lewis testified he proposed to do, is a farm implement or machine used and useful in harvesting grain; but the mechanics of operation and result ordinarily to be expected from proper use of a grain combine under ordinary conditions is not known to the Court. Mr. Lewis testified the combine never made a full day's run without breaking down; that is, it never performed satisfactorily for a full day. He described various parts that broke or failed. Among the deficiencies in the machine, he said, "I couldn't control the header enough to keep it from either beating itself out on the ground or to where it would get down and pick up the straw, so we tried putting on new heavier

springs, more springs, less springs, different adjustments and nothing would protect the pickup attachment from beating itself up." On further direct examination, Mr. Lewis testified that he "discovered the machine was not the character of machine that he had studied about in the brochures and in the advertisements." He did not produce copy of any advertisement that he referred to and did not testify to the content thereof. He did say, however, that the machine did not live up to the representations in the advertisements, but failed to quote, state the substance, or describe in any manner the representations to which he referred and concluded by saying he was unable to make it "combine" in his custom business.

Although it would be reasonable for a trier of facts to assume from this evidence that the seller of this expensive combine understood the buyer intended to use it in harvesting grain, yet there is no evidence that the buyer advised the seller what purpose or use he had in mind for it, as well as no evidence of the use generally made of such machinery. Nor is there evidence that the seller represented that the machine was fit and suitable for custom harvesting (or for harvesting of any kind). In fact, as previously stated, there is no evidence of any particular representation made by the seller and, except for Mr. Lewis's testimony that in his opinion it did not live up to the representations made by the advertising material, there is nothing to show that representations were either made or violated. In this connection, again it may be said that it would be reasonable for the fact trier to assume that such a valuable piece of machinery was supposed to be capable of operating for more than a day at a time without "beating itself out on the ground" and undergoing other mechanical failures, but proof is wanting in this respect. The conclusion is inescapable that there is no proof of representations made by the seller, or of an implied warranty of fitness for a particular purpose. Points of error raising these issues are sustained. And, further, if there is evidence construa-

ble. as giving support to findings on these issues, such as testimony that the *combine would not combine,* it is regarded as insufficient to support the findings on file.

The exceptional condition of the record justifies reversal and remand for new trial, rather than rendition. Examination of the statement of facts reveals that facts relevant to representations and implied warranty were not fully developed. Counsel for Lewis may have been lulled into quiescence and believed that the Court considered the evidence in this respect sufficient when certain objections thereto were lodged by counsel for New Holland and overruled by the Court. Failure to inquire as to the substance of alleged representation and assurance of the fitness of the machine for. the work contemplated when Lewis was a witness is difficult to account for otherwise. All of appellant's points of error have been. examined, but further discussion is unwarranted as disposition thereof would not require disposition different from that heretofore indicated. In the interest of justice, the judgment of the Trial Court is reversed, and the case is remanded for a new trial.