Dave **RICKEY**, Appellant,

v.

**HOUSTON HEALTH CLUB, INC.,** d/b/a **President & First Lady Health & Racquetball Club,** Appellee.

No. 06–92–00066–CV.

Court of Appeals of Texas, Texarkana.

Aug. 31, 1993.

Rehearing Denied Sept. 21, 1993.

Hugh J. Howerton, Wright & Howerton, Houston, for appellant.

Gary M. Pritchard, Neel & Seymore, Houston, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Dave Rickey appeals from a summary judgment rendered against him in his suit against Houston Health Club, Inc., d/b/a President & First Lady Health & Racquetball Club (the Health Club). Rickey alleged causes of action under both common law negligence theory and the Texas Deceptive Trade Practices Act for personal injuries sustained when he fell on the Health Club's astroturf jogging track. The trial court granted summary judgment in favor of the Health Club on all claims. Rickey contends that the trial court erred in granting summary judgment because he has both a viable negligence action and a viable DTPA claim against the Health Club.

On November 6, 1988, Rickey entered into a retail installment contract with the Health Club that allowed him to use the Health Club's facilities in exchange for an initiation fee of $616 and a monthly fee of $5.30. Rickey alleges that on March 4, 1990, he injured his knee when he tripped and fell on the Health Club's indoor jogging track. The track was covered in astroturf, which Rickey claims is an inappropriate surface for a track because of its tendency to catch and grab a runner's shoe.

Rickey filed suit alleging both negligence and a violation of the DTPA on the part of the Health Club. The Health Club moved for summary judgment claiming the affirmative defense of release and also claiming that the DTPA had no application in premises liability cases. The trial judge granted summary judgment favoring the Health Club.

Summary judgment is proper provided the movant establishes that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). When a summary judgment order does not state the grounds upon which it is granted, it may be affirmed based on any of the independent arguments alleged in the motion for summary judgment. *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied). An appeals court should not consider summary judgment evidence that favors the movant's position unless it is uncontroverted. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his or her favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex.1985).

■ Rickey first contends that the waiver and release provision in the contract is insufficient to shield the Health Club from liability for negligence because it lacks consideration and because it is vague and unenforceable. But the release provision is just one part of the whole contract in which the Health Club agreed to allow Rickey to use its facilities in exchange for Rickey's initiation fee, his promise to pay monthly membership dues, and his promise to relinquish any claim he might have against the Health Club. A single consideration on the part of the Health Club is sufficient to support multiple promises made by Rickey in the same contract. *See Birdwell v. Birdwell,* 819 S.W.2d 223 (Tex.App.—Fort Worth 1991, writ denied).

■ In *Page Petroleum, Inc. v. Dresser Industries, Inc.,* 853 S.W.2d 505, 508 (Tex.1993), the Texas Supreme Court expanded the scope of the fair notice requirements of conspicuousness and the express negligence doctrine to cover releases. Previously in Texas, the fair notice requirements applied only to indemnity agreements. Black's Law Dictionary defines a release as "[t]he relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists or to whom it accrues, to the person against whom it might have been demanded or enforced." BLACK'S LAW DICTIONARY 1289 (6th ed. 1990); *see also Page Petroleum,* 853 S.W.2d at 507–508.

■ The release provision contained in the contract reads as follows:

> You (the buyer and member) agree that you are aware that you are engaging in physical exercise and the use of exercise equipment and club facilities which could cause injury to you. You are voluntarily participating in these activities and assume all risk of injury to you that might result. You hereby agree to waive any claims or rights you might otherwise have to sue the health club, its employees or agents for injury to you on account of these activities. You have carefully read this waiver and release and fully understand it is a release of liability. You further agree to release seller from any liability for loss or theft of personal property.

This provision is clearly a release because it states that the buyer agrees to relinquish any claim or right to sue the Health Club. The express negligence doctrine provides that, in order to require one party to release or indemnify another party against the consequences of that party's own negligence, the intent of the parties to do so must be expressed in specific terms within the four corners of the contract. *See Page Petroleum,* 853 S.W.2d at 508–509; *Ethyl Corp. v. Daniel Const. Co.,* 725 S.W.2d 705, 707–08 (Tex.1987). The contract provision at issue in the present case does not expressly list negligence as a claim being relinquished by the buyer. This provision does not meet the express negligence doctrine.

Other than claiming release, the Health Club made no other arguments regarding Rickey's negligence claims in its motion for

summary judgment. We therefore sustain Rickey's first two points of error.

Rickey additionally argues that summary judgment was improper in regard to his DTPA claims. In his second amended petition, Rickey set out three DTPA causes of action alleging (1) that the Health Club violated TEX.BUS. & COM.CODE ANN. § 17.-46(b)(5) (Vernon 1987) by representing that its jogging track had characteristics, uses, and benefits which it did not have, namely that it was safe for patron use; (2) that the Health Club violated TEX.BUS. & COM.CODE ANN. § 17.46(b)(7) (Vernon 1987) by representing that the jogging track was of a particular standard or quality when it was not; and (3) that the Health Club violated TEX. BUS. & COM.CODE ANN. § 17.50(a)(2) (Vernon 1987) by breaching an implied warranty insuring the suitability of the jogging track for its intended use.

Because Rickey's first two DTPA claims are both based on so-called laundry list violations under Section 17.46 and the Health Club used the same arguments against both, we shall discuss them together. Rickey contends that the Health Club violated Section 17.46(b)(5) of the DTPA by representing that its jogging track had characteristics, uses, and benefits which it did not have, namely that it was safe for patron use, and that the Health Club violated Section 17.46(b)(7) by representing that the jogging track was of a particular standard or quality when it was not. Rickey does not allege that anyone representing the Health Club made any express verbal misrepresentations regarding the track, but an implied representation has been held to constitute a laundry list violation under the DTPA. See Lone Star Ford, Inc. v. McGlashan, 681 S.W.2d 720, 724 (Tex. App.—Houston [1st Dist.] 1984, no writ); see also Chambless v. Barry Robinson Farm Supply, 667 S.W.2d 598, 602 (Tex.App.—Dallas 1984, writ ref'd n.r.e.) (holding that absent any representation to the contrary, dealer represented that the clevis would be included in the sale of the tractor because the tractor was displayed with the clevis on it). In Lone Star, the court said that when a dealer represents that he can sell a used vehicle, "he necessarily represents that he can transfer a legal title to the new owner." Lone Star Ford, 681 S.W.2d at 724. Furthermore, the Act itself does not prohibit causes of action premised on implied representation. In the present case, Rickey contends that since the Health Club held the astroturf track out as a jogging track, both at the facility and in its television advertisements, the Health Club implied that the track is safe for jogging.

In its motion for summary judgment, the Health Club contended that summary judgment was proper in regard to Rickey's first two DTPA claims because (1) a premises owner cannot be held to have impliedly represented that its premises are safe and (2) Rickey signed a contract which recited that he was aware that the use of the club facilities could cause injury to him. In its brief, the Health Club repeatedly speaks of Rickey's claim as if it were a "slip and fall" premises liability case. Building from this premise, the Health Club argues that slip and fall causes of action are exclusively a matter of negligence law, citing Corbin v. Safeway Stores, Inc., 648 S.W.2d 292 (Tex. 1983) (an invitee's suit against a store owner is a simple negligence action).

The Health Club's argument is faulty because, although membership in a health club may create an invitee relationship, Rickey has here contracted to use the premises for a specific purpose, i.e., to jog. See Adam Dante Corp. v. Sharpe, 483 S.W.2d 452 (Tex. 1972)[1] (member of health spa had relationship with spa that was something less than tenant to landlord). Rickey paid his money for the right to use the facilities, he has not simply walked in from the street to shop. The facilities are the service.[2] Therefore, the Health Club's contention that the present

1. According to Parker v. Highland Park, Inc., 565 S.W.2d 512, 518 (Tex.1978), the case of Farley v. M M Cattle Co., 529 S.W.2d 751 (Tex.1975), overruled Adam Dante Corp. v. Sharpe, 483 S.W.2d 452 (Tex.1972), in part but not on any ground relevant to the present case.

2. Section 17.45 of the Texas Business and Commerce Code defines services as "work, labor, or service purchased or leased for use...." TEX.BUS. & COM.CODE ANN. § 17.45 (Vernon 1987).

case is merely a slip and fall tort case is inaccurate. Rickey is a buyer of services and, as such, his cause of action may fall under the DTPA.

 The Health Club further argues that Rickey, by signing the contract, acknowledged that the Health Club facilities could cause injury to him because the contract states: "[Y]ou are aware that you are engaging in physical exercise and the use of exercise equipment and club facilities which could cause injury to you." The Health Club contends that this statement negates any implied representation that the jogging track was safe for use. We disagree. Rickey is alleging in his DTPA claims that the Health Club represented the track as possessing certain qualities or characteristics that it did not and that it represented the track as being of a certain standard or quality when it was not. The statement relied on by the Health Club in its motion for summary judgment does not even impliedly negate any representations made regarding the suitability or condition of the jogging track. Therefore, this provision does not bar Rickey's DTPA causes of action. Furthermore, none of the provisions in the contract purporting to relinquish rights of the buyer are capable of barring Rickey's DTPA causes of action because such a provision would be contrary to the public policy of the State. Tex.Bus. & Com.Code Ann. § 17.42(a) (Vernon Supp. 1993).

The arguments made by the Health Club in its motion for summary judgment do not establish as a matter of law that no material issues of fact exist as to Rickey's Section 17.46(b)(5) and Section 17.46(b)(7) DTPA claims. The trial court therefore erred in rendering summary judgment on these two causes of action. Rickey's third and fourth points of error are sustained.

 In his third DTPA claim, Rickey alleged that the Health Club violated Section 17.50(a)(2) of the DTPA by breaching an implied warranty as to the suitability of the jogging track for jogging. On appeal, Rickey does not challenge the propriety of the trial court's granting of summary judgment on this issue. A court of appeals may not reverse a trial court's judgment in the absence

of properly assigned error. *Texas National Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex. 1986). We therefore affirm the judgment of the trial court as to the Section 17.50 claim.

The trial court erred in rendering summary judgment against Rickey on his negligence claim and his two DTPA misrepresentation claims. The judgment of the trial court is reversed in part and remanded for further proceedings in accordance with this opinion.